IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

HARTFORD INSURANCE COMPANY
OF THE MIDWEST and INTERSTATE
INDEMNITY INSURANCE COMPANY,

        Plaintiffs,

vs.                               Civ. No. 04-0742 LCS/LAM

**CHARLES D. CLINE and JUDITH E.
DAVIS,**

        **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendants' Motion for Summary Judgment, and supporting memorandum, filed on August 6, 2004 and Plaintiffs' Motion for Summary Judgment., and supporting memorandum, filed December 15, 2004. (Defs.' Mot. Summ. J., Doc. 5; Defs.' Mem. Supp. Mot. Summ. J., Doc. 29; Pls.' Mot. and Mem. Supp. Summ. J., Doc. 32). The United States Magistrate Judge, acting upon consent and designation pursuant to 28 U.S.C. § 636, and having considered the record, arguments of counsel, relevant law, and being otherwise fully advised, finds that Defendants' Motion should be **DENIED** and that Plaintiffs' Motion should be **GRANTED**.

**I.    Background**

The parties have agreed that there are no genuine issues of material fact. A summary of the salient facts follows. This case arises out of an automobile accident that occurred between Defendant Davis and the alleged underlying tortfeasor, Jack W. Ballard on September 13, 2003 in Andrew

County, Texas. (Compl. ¶ 15). Defendant Davis sustained bodily injuries as a result of the accident. *Id.* Defendant Davis was driving a 1991 Buick at the time of the accident. (Answer ¶ 8).

Defendants claim that Davis is a Class I insured under a commercial policy issued by Interstate Indemnity Insurance Company ("Interstate") and a personal policy issued by Hartford Insurance Company of the Midwest ("Hartford"). On September 19, 2002 Interstate issued commercial automobile policy No. BA6103491-01 which was effective through September 19, 2003. (Compl. Ex. B., Doc. 1, Ex. B). The policy insured the following vehicles: (1) a 1992 Freightliner tractor; (2) a 1980 Fontaine trailer, and (3) a 2000 Ford F700 truck. *Id.* The policy provides UM/UIM coverage for the covered vehicles with limits of $300,000 per accident or loss. *Id.* Hartford issued automobile policy No. 55 PHE 96102 on November 5, 2002 which was effective through November 5, 2003. (Compl. Ex. A, Doc. 1, Ex. A). That policy insured the following vehicles: (1) a 1991 Buick Century; (2) a 1990 Chevrolet K1500; (3) a 1979 Dodge motor home; and (4) a 1996 Chevrolet C1500. *Id.* C. D. Cline was the named insured on both policies. (Compl. Ex. A-B, Doc. 1, Ex. A-B). Davis was listed as a driver on the Hartford policy. (Compl. Ex. A, Doc. 1, Ex. A). Both contracts were executed in New Mexico. (Compl. Ex. A-B, Doc 1, Ex. B).

The Interstate policy states that an "insured" for Uninsured Motorist Coverage are the following:

a. Any Class I "insured" meaning the Named Insured and any "family members".

b. Anyone other than a Class I "insured" "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured". (Compl. Ex. B, Doc. 1, Ex. B).

The Interstate Policy defines "family member" as "a person related to an individual Named Insured by blood, marriage or adoption who is a resident of such Named Insured's household, including a ward or foster child." *Id.*

The Hartford policy defines an "insured" for Uninsured Motorist Coverage as follows:

1. You or any family member.

2. Any other person occupying your covered auto.

3. Any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by a person in 1. or 2. above. (Compl. Ex. A, Doc. 1, Ex. A).

The Hartford policy defines family member as "a person related to you [named insured] by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child." *Id.* Davis intended to have the commercial vehicles covered under a commercial policy with Interstate and intended to have the personal automobiles covered under a personal policy with Hartford. (Davis Dep. p. 69, ln. 4-7, Defs.' Ex. 2, Doc. 27). The parties agree that Plaintiffs are entitled to a statutory offset for any sums received from the liability carrier or the tortfeasor's estate. (Pls.' Mot. and Mem. Supp. Mot. Summ. J. at 15-16, Doc. 32; Defs.' Resp. Mot. Summ. J. at 7, Doc. 34).

Defendants are not married but have resided together since 1997. (Davis Dep. p. 11, ln. 12-23, Pls.' Ex. 2, Doc. 27; Davis Aff. ¶ 4, Defs.' Ex. 2, Doc. 29; Cline Aff. ¶ 4, Defs.' Ex. 1, Doc. 29). They hold themselves out to the public as being married. (Davis Dep. p. 55, ln. 11-13, Pls.' Ex. 2, Doc. 27). Ms. Seidl, an agent for Interstate, understood that Davis and Cline lived together but are not married. (Seidl Aff. ¶ 5, Pls.' Ex. D, Doc. 32). Cline is not required by law to care for Davis. (Davis Dep. p. 58, ln. 16-19, Pls.' Ex. 2, Doc. 27).

3

In September 1997, Defendant Davis started bookkeeping for Cline at C & D Investment, including paying the bills and renewing insurance policies. (Davis Dep. p. 21, ln. 10-13, Pls'. Ex. 2, Doc. 27; Davis Dep. p. 69, ln. 21-23, Pls.' Ex. C, Doc. 32; Davis. Aff. ¶ 3, Defs.' Ex. 2, Doc. 29). Davis worked at Hobbs Auto Mart from November 1996 to September 1998 as a bookkeeper and sales person. (Davis Dep. p. 20, ln. 1-8, Pls.' Ex. 2, Doc. 27). Davis did not identify herself as an employee of C & D Investment when she applied for coverage of the commercial vehicles under the Interstate policy. (Davis Dep. p. 62, ln. 13-17, Defs.' Ex. 2, Doc. 28; Seidl Aff. ¶ 6, Pls.' Ex. D, Doc. 32). Davis affirmatively asked to have her name included on the Interstate policy in September 2004. (Seidl Aff. ¶ 4, Pls.' Ex. D, Doc. 32). Davis has not collected any wages or salary from Cline. (Davis Dep. p. 15, ln. 14-15, Pls.' Ex. 2, Doc. 27). All of the money generated from Cline's business has gone to the common good of both Cline and Davis. (Davis Dep. p. 70, ln. 13-15, Defs.' Ex. 2, Doc. 28). Davis operates one of the commercial vehicles on an occasional basis, the Ford F700. (Davis Dep. p. 62, ln. 18-21, Defs.' Ex. 2, Doc. 28).

Davis owns two rental properties. (Davis Dep. p. 16, ln. 2-14, Pls.' Ex. 2, Doc. 27). She has her own bank account. (Davis Dep. p 51, ln. 8-19, Pls.' Ex. 2, Doc. 27) Davis takes care of the financial affairs for herself and Cline. (Davis Dep. p. 69, ln.12-20, Pls.' Ex. 2, Doc. 27).

On August 6, 2004 Defendants filed their Motion for Summary Judgment on the ground that Davis is a Class I insured under both the Interstate and Hartford policies due to her status as Cline's employee, domestic partner, and/or ward. (Defs.' Mot. Summ. J., Doc. 5 ; Defs.' Mem. Supp. Summ. J.; Doc. 29). On December 15, 2004, Plaintiffs filed their Motion for Summary Judgment on the ground that Davis is not Cline's employee, spouse, and/or ward and as such, she is not an insured

under the Interstate policy and is a Class II insured on the Hartford policy. (Pls.' Mot. and Mem. Supp. Summ. J., Doc. 32).

**II.     Standard**

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment is proper when the pleadings, depositions, answers to interrogatories and admissions on file, as well as any affidavits "show that there is no genuine issue as to any material fact." *Id.* When applying this standard, the Court examines the record and reasonable inferences in the light most favorable to the non-moving party. *See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).

The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)). The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case. *See Celotex v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate a genuine issue for trial on a material matter. *See McGarry v. Board of County Comm'rs*, 175 F.3d 1193, 1198-1199 (10th Cir. 1999).

**III.   Analysis**

    **A.   Choice of Law**

The Court must initially make a choice of law determination since this case arises from an accident that occurred outside of the jurisdiction. The underlying automobile accident occurred in Texas while the automobile insurance contracts were executed in New Mexico. *See* Compl. Ex. A-B; Doc. 1, Ex. A-B. In interpreting automobile insurance contracts, the law of jurisdiction in which the contract was executed applies regardless of the situs of the accident. *Shope v. State Farm Ins. Co.*, 925 P.2d 515, 517. (N.M. 1996).[1]

    **B.   Interstate Policy: Davis as Employee**

Interstate issued commercial automobile policy No. BA6103491-01 on September 19, 2002 which was effective through September 19, 2003. (Compl. Ex. B.; Doc. 1, Ex. B). The policy insured the following vehicles: (1) a 1992 Freightliner tractor; (2) a 1980 Fontaine trailer, and (3) a 2000 Ford F700 truck. *Id.* The policy provides UM/UIM coverage for the covered vehicles with limits of $300,000 per accident or loss. *Id.* Defendants claim that Defendant Davis is a Class I insured under the Interstate policy. C. D. Cline was the only named insured on the policy. *Id.* The relevant terms of the policy state that an "insured" for Uninsured Motorist Coverage are the following:

    a. Any Class I "insured" meaning the Named Insured and any "family members".

    b. Anyone other than a Class I "insured" "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

    c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured". *Id.*

---

[1] The Court also notes that both Plaintiffs and Defendants agree on this matter. *See* Defs.' Mem. Supp. Summ. J. at 12, Doc. 29 at 12; Pls.' Resp. Mot. Summ. J. at 6, Doc. 27.

6

Defendants solely assert that Davis is a Class I insured because she is a "family member" under the policy.[2] The policy defines "family member" as "a person related to an individual Named Insured by blood, marriage or adoption who is a resident of such Named Insured's household, including a ward or foster child." *Id.*

Defendants rely heavily the New Mexico Supreme Court decision of *Horne v. United States Fidelity & Guaranty Company* for the proposition that the language contained in the policy is ambiguous and must be construed to include Davis as a Class I insured because she was Defendant Cline's employee. *Horne v. United States Fidelity & Guaranty Co.*, 791 P.2d 61 (N.M. 1990). In *Horne*, the named insured, New Mexico Security Patrol, was a corporation under a business auto policy. *Id.* The relevant portion of the uninsured coverage stated that "you or any family member" is an insured. *Id.* The definition of "family member" in *Horne* is identical to the one in the Interstate policy. *Id.* at 62; Compl. Ex. B; Doc. 1, Ex. B. The Court found that "you or any family member" was ambiguous because "you" referred to the named insured, which was a corporation and it was "'manifestly absurd'" to refer to a corporation as having any "family members." *Id.* (citation omitted). The Court went on to hold that given the context of the policy, "family members" could be construed as including employees of the named insured and thus, employees of the corporation were considered as Class I insureds. *Id.* at 62-63. In short, the definition of a Class I insured was found to be ambiguous in the instance where the named insured was a corporation. *Id.*

---

[2] Defendants do not assert nor have they offered any evidence that Davis fits the last two definitions of "insured" under the Interstate policy. (Defs.' Resp. Mot. Summ. J. at 3; Doc. 34 at 3). There is nothing in the record that raises a genuine issue of material fact as to whether Defendant Davis was occupying a covered "auto" or a temporary substitute for a covered "auto" or that the injury suffered by Davis was caused by another "insured." *See McGarry*, 175 F.3d at 1198-1199.

7

Defendants reliance on *Horne* is misplaced. While the Interstate policy is a commercial policy, the named insured is not a corporation, as it was in *Horne*. *See id.* Under the Interstate policy, the named insured is C. D. Cline, not C & D Investment, and thus the language in the Interstate policy stating that a Class I insured is the "Name Insured [C.D. Cline] and any 'family members'" is not patently ambiguous as it was in *Horne*. *See* Compl., Ex. B; Doc. 1, Ex. B. When one considers C. D. Cline's 'family members' one is not led to the same "manifestly absurd" conclusion as is the case when one considers a corporation's family members. *See Horne*, 791 P.2d 62. Thus, *Horne* is not of assistance to Defendants. *Id.* Moreover, the court in *Horne* did not determine that the definition of a "family member" as it was defined in the policy in that case was ambiguous regardless of whom was named as an insured. *Id.*

Even if the court (1) applies *Horne* since the policy at issue is a commercial policy and finds the definition of "family member" as ambiguous in light of *Horne* and (2) assumes that Defendant Davis is afforded the benefit of having such ambiguity construed against Plaintiffs,[3] Davis cannot be a Class I insured by virtue of being Cline's employee. *See Horne*, 791 P.2d 62-63. As discussed below, Defendants present no evidence that would raise an issue of material fact as to her status as an employee. *See McGarry*, 175 F.3d at 1198-1199.

Under New Mexico law, "[t]he primary test to determine whether an employer-employee relationship exists is the extent of the employer's right to control the details of the work of the

---

[3] The Court notes that the general rule is that ambiguities in an insurance contract are construed against the insurer, but the general rule is "not applicable to situations in which a third party who is not expressly named as the insured or who is not an acknowledged family member is seeking coverage under a policy that has not been purchased by the third party." *Jaramillo v. Providence Washington Ins. Co.*, 871 P.2d 1343, 1347-1348. (N.M. 1994). As discussed in detail below, Defendant Davis is a third party who is not expressly named as the insured, nor is she an acknowledged family member; as such, ambiguities need not be construed in her favor and it is Defendants' burden to provide evidence that would raise a material issue of genuine fact that the parties intended that Davis be insured under the insurance policies at issue. *Id.*; *See McGarry,* 175 F.3d 1198-1199.

employee." *Houghland v. Grant*, 891 P.2d 563, 566 (N.M. Ct. App. 1995). The court should consider the following items when making the determination of whether an employer has the power to control an employee: "(1) direct evidence of the employer's power to control the manner and means of the performance of the employee, (2) the method of payment and compensation, (3) whether the employer furnishes equipment for the worker, and (4) whether the employer has the power to terminate the employee at will." *Id.* Defendant Davis did the bookkeeping for C & D Investment, including paying bills, renewing insurance policies, and transporting contract labor to and from job sites. (Davis Dep. p. 69, ln. 21-23, Pls.' Ex. C, Doc. 32; Davis. Aff. ¶ 3, Defs.' Ex. 2, Doc. 29). Davis did not identify herself as an employee of the business when she applied for coverage of the commercial vehicles. (Davis Dep. p. 62, ln. 13-17, Defs.' Ex. 2, Doc. 28; Seidl Aff. ¶ 6, Pls.' Ex. D, Doc. 32). Davis never collected any wages or salary from Cline. (Davis Dep. p. 15, ln. 14-15, Pls.' Ex. 2, Doc. 27). All of the money generated from Cline's business went to the common good of both Cline and Davis. (Davis Dep. p. 70, ln. 13-15, Defs.' Ex. 2, Doc. 28). Moreover, Defendants have not provided the court with any evidence that would demonstrate that Defendant Cline had any power to control Davis as an employee. As such, Defendants have not presented any evidence that would create a genuine issue of material fact as to whether Davis is an employee of Cline. *See McGarry*, 175 F.3d at 1198-1199. Having found that Davis is not Cline's employee, she cannot be a Class I insured under the Interstate policy.

### C.     Interstate and Hartford Policies: Davis as "Spouse" or "ward"

As indicated above, Defendants claim Davis is a Class I insured under the Interstate policy because she fits the definition of that status. Under the Interstate policy, a Class I insured is defined as "the Name Insured and any "'family members.'" (Compl., Ex. B; Doc. 1, Ex. B). "Family member"

9

is defined as "a person related to an individual Named Insured by blood, marriage or adoption who is a resident of such Named Insured's household, including a ward or foster child." *Id.* Defendants make the argument that Davis is Cline's domestic partner or ward, and is thus a "family member" under the Interstate Policy and should be afforded Class I insured status. Davis was not driving a vehicle insured by Interstate at the time of the accident. (Answer ¶ 8).

Defendants make the same argument that Davis is a Class I insured under the Hartford policy due to her status as Cline's domestic partner or ward. Hartford issued automobile policy No. 55 PHE 96102 on November 5, 2002. (Compl., Ex. A; Doc. 1, Ex. A). That policy insured the following vehicles: (1) a 1991 Buick Century; (2) a 1990 Chevrolet K1500; (3) a 1979 Dodge motor home; and (4) a 1996 Chevrolet C1500. *Id.* Davis was driving the 1991 Buick century at the time of the accident. (Answer ¶ 8). The Hartford Policy provides UM/UIM coverage for all vehicles with bodily injury limits of $25,000 per person and $50,000 per accident. *Id.* C. D. Cline was the only named insured. *Id.* The relevant terms of the Hartford policy define an "insured" for Uninsured Motorist Coverage as follows:

>  1. You or any family member.
>
>  2. Any other person occupying your covered auto.
>
>  3. Any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by a person in 1. or 2. above. *Id.*

Like the Interstate policy, the Hartford policy defines family member as "a person related to you [named insured] by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child." *Id.* Defendants do not assert that Cline and Davis are married; however, they argue that due to their status as domestic partners since 1997 through the date of the accident, Davis should be afforded Class I insured status under both the Interstate and Hartford

10

policies. (Defs.' Mem. Supp. Summ. J. at 19-20; Doc. 29 at 19-20). Alternatively, they argue that Davis is Cline's ward because she is under his care and protection and as such, Davis should be afforded Class I status under both insurance polices. (*Id.* at 16-18; Davis Aff. ¶ 2, Defs.' Ex. 2, Doc. 29; Cline Aff. ¶ 2, Defs.' Ex. 1, Doc. 29). The Court will discuss each of Defendants' theories below and because Defendants present no evidence that raises a genuine issue of material fact, summary judgment must be granted in favor of Plaintiffs. *See McGarry*, 175 F.3d at 1198-1199.

### 1.     Spouse

Defendants have resided together since 1997 but they are not married. (Davis Dep. p. 11, ln. 12-23, Pls.' Ex. 2, Doc. 27; Davis Aff. ¶ 4, Defs.' Ex. 2, Doc. 29; Cline Aff. ¶ 4, Defs.' Ex. 1, Doc. 29). Though they held themselves out to the public as being married, they are not legally married. *Id.* It is well-established that New Mexico does not recognize the doctrine of common law marriage. *In re Estate of Bivians*, 652 P.2d 744 (N.M. Ct. App. 1982); *See also*, *In re Estate of Lamb*, 655 P.2d 1001 (N.M. 1982). "An agreement to become husband and wife in New Mexico without a valid ceremonial marriage evidenced by a proper license is of no effect. A holding out as husband and wife in this state without a valid marriage ceremony, no matter how long of duration, cannot ripen into a valid marriage between the parties. A meretricious relationship begun in this state does not change its character by virtue of brief sojourns or travels of the parties to states which sanction common law marriage." *Bivians*, 652 P.2d at 749-750. Thus, under New Mexico law, Davis and Cline cannot be considered as married regardless of the fact that they have been living together since 1997 and that they have held themselves out to the public as husband and wife. (*See id.*; Davis Dep. p. 11, ln. 12-23, Pls.' Ex. 2, Doc. 27; Davis Aff. ¶ 4, Defs.' Ex. 2; Doc. 29; Cline Aff. ¶ 4, Defs.' Ex. 1, Doc. 29). Defendants further argue that the court should grant coverage to domestic partners because "in the current trend of American society, the 'domestic partner' is a known and accepted reality." (Defs.'

Mem. Supp. Mot. Summ. J. at 20, Doc. 29 at 20). While that may be the current trend in our society, in my view, it is for the legislature and not the courts to extend Class I insurance coverage to domestic partners. Defendants have presented no evidence that raises an issue of material fact with regard to Davis being Cline's "family member" by virtue of being his spouse under either the Interstate or Hartford policies. *See McGarry*,175 F.3d at 1198-1199.

### 2.    Ward

Defendants also assert that Davis is Cline's ward under both the Interstate and Hartford policies. (Defs.' Mem. Supp. Summ. J. at 16-18, Doc. 29 at 16-18). The parties agree that "ward" is not defined under either of the policies. (Defs.' Mem. Supp. Summ. J. at 16, Doc. 29 at 16; Pls.' Resp. Mot. Summ. J at 12, Doc. 27 at 12). The Tenth Circuit has found in applying Oklahoma law, that the term "ward" as used in the definition of a family member is "ambiguous and should not be restricted to a technical legal definition including only a person on behalf of whom a legal guardian has been appointed by a court of competent jurisdiction. *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987). Further, the Court noted that the court can rely on dictionary definitions of the ambiguous term for guidance and the "'court must apply the meaning which provides the most coverage for the insured."[4] *Id.* (quotation omitted). Even if the Court gives Davis the benefit of applying the least restrictive definition of "ward" to her situation, Defendants still present no evidence that would give rise to a genuine issue of material fact regarding Davis' status as a ward of Cline. *See McGarry*,175 F.3d at 1198-1199.

According to the American Heritage Dictionary of the English Language, "ward" is defined as "a minor or incompetent person placed under the care or protection of a guardian or the court" or

---

[4] *See* Footnote 3, *supra*.

"a person under the protection or care of another." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1939 (4th ed. 2000). The Oxford American Dictionary of Current English defines a "ward" as "a minor under the care of a guardian appointed by the parents or a court" or a "minor or mentally deficient person placed under the protection of a court." OXFORD AMERICAN DICTIONARY OF CURRENT ENGLISH 919 (1st ed. 1999). Webster's New World Dictionary defines a "ward" as "a child or legally incompetent person placed under the care of a guardian or court" or "any person under another's protection or care."[5] WEBSTER'S NEW WORLD DICTIONARY OF THE AMERICAN LANGUAGE 1601 (2nd College ed. 1970).

Analyzing these definitions, the court notes that the most expansive definition of "ward" is a person under the protection or care of another person. *See also*, Houston 817 F.2d at 86. Defendants do not contend that Davis fits the legal definition of ward as Cline was never appointed by a court as Davis' guardian. *See* BLACK'S LAW DICTIONARY 1583 (6th ed. 1990).; Davis Dep. p. 58, ln. 16-19, Pls.' Ex. 2, Doc. 27. Defendants assert that Davis is dependent on Cline for her support, care and maintenance. (Cline Aff. ¶ 2, Defs.' Ex. 1, Doc. 29; Davis Aff. ¶ 2, Defs.' Ex. 2, Doc. 29). However, the court is not persuaded by Defendants' argument that Davis is Cline's ward. When the most expansive definition of "ward" is read in context with the other acceptable meanings of the word, the definitions suggest that one becomes a ward through necessity. *See* AMERICAN HERITAGE DICTIONARY

---

[5] The Court also notes that the definition of ward is much more restrictive under statute. N.M. STAT. ANN. §§, 45-1-201, 45-5-101 (Michie 1978). Under the Uniform Probate Code, "ward" is defined as "a person for whom a guardian has been appointed." N.M. STAT. ANN. § 45-5-101 (Michie 1978). Guardian is then defined as "a person who has qualified to provide for the care, custody or control of the person of a minor or incapacitated person pursuant to testamentary or court appointment, but excludes one who is merely a guardian ad litem. N.M. STAT. ANN. § 45-1-201 (Michie 1978). Finally, "incapacitated person" is defined as "any person who demonstrates over time either partial or complete functional impairment by reason of mental illness, mental deficiency, physical illness or disability, chronic use of drugs, chronic intoxication or other cause, except minority, to the extent that he is unable to manage his personal affairs or he is unable to manage his estate or financial affairs or both." N.M. STAT. ANN. § 45-5-101 (Michie 1978). Thus, under the statute, a "ward" is the equivalent of an "incapacitated person" or a minor. N.M. STAT. ANN. §§, 45-1-201, 45-5-101 (Michie 1978). Clearly, Ms. Davis does not meet this definition.

OF THE ENGLISH LANGUAGE 1939 (4th ed. 2000); OXFORD AMERICAN DICTIONARY OF CURRENT ENGLISH 919 (1st ed. 1999); WEBSTER'S NEW WORLD DICTIONARY OF THE AMERICAN LANGUAGE 1601 (2nd College ed. 1970).  That is, one becomes ward if he or she is unable to take care of or protect himself, not if one merely chooses to have another person take care of or protect him. *See id.*; Footnote 5, *supra*.

In this case it is clear that Davis chose to be taken care of and protected by Cline (in fact she is). She was certainly not being cared for *through necessity*.  There is no evidence that at the time the policies were issued that Davis was unable to independently provide for herself financially or that she was unable to take care of herself.  In her deposition, Davis stated that she started working for Cline as a bookkeeper in September 1997.  (Davis Dep. p. 21, ln. 10-13, Pls'. Ex. 2, Doc. 27).  She also worked at Hobbs Auto Mart from November 1996 to September 1998 also as a bookkeeper and sales person.  (Davis Dep. p. 20, ln. 1-8, Pls.' Ex. 2, Doc. 27).  Thus, it appears that Davis has the ability to find employment and income outside of the care of Cline and that she would be able to care for herself financially if she so chose.  Further, she owns two rental properties which serve as additional sources of income and could provide her shelter if she so chose. (Davis Dep. p. 16, ln. 2-14, Pls.' Ex. 2, Doc. 27).  She also has her own bank account. (Davis Dep. p 51, ln. 8-19, Pls.' Ex. 2, Doc. 27) Davis also takes care of the financial affairs for herself and Cline.  (Davis Dep. p. 69, ln.12-20, Pls.' Ex. 2, Doc. 27).  Thus, since Davis had the ability to take care of herself as well as provide for herself financially, the fact that she chose to live with Cline does not  in any sense make her a ward.  As such, Defendants have presented no evidence that raises an issue of material fact with regard to Davis being

Cline's "family member" by virtue of being his ward under either the Interstate or Hartford policies.[6] *See McGarry*, 175 F.3d at 1198-1199.

In sum, Defendants have not presented any evidence that raises a genuine issue of material fact that Davis is a "family member" because she is a spouse or alternatively, a ward of Cline. *See McGarry*, 175 F.3d at 1198-1199. As such, because Davis is not an employee, a spouse, or ward of Cline under the Interstate policy, she is not an insured under the policy. Under the Hartford policy she is not a Class I insured but she is a Class II insured because she was a non-family member occupying a covered auto, the 1991 Buick Century.[7] The parties agree that Plaintiffs are entitled to a statutory offset for any sums received from the liability carrier or the tortfeasor's estate. *See Schmick v. State Farm Mut. Auto. Ins. Co.*, 704 P.2d 1092, 1098 (N.M. 1985) (explaining N.M. STAT. ANN.§ 66-5-301(1978)); Pls.' Mot. and Mem. Supp. Mot. Summ. J. at 15-16, Doc. 32; Defs.' Resp. Mot. Summ. J. at 7, Doc. 34. Because Defendants have not presented any evidence that raises an issue of material fact that Davis is an employee, a spouse, or a ward of Cline, Davis is not an insured under the

---

[6] The Court also takes note of Defendants' argument that the word "including" and "includes" in the Interstate and Hartford policies which precede the phrase "foster child and ward" in both policies indicates that "foster child and ward" are listed by way of illustration and not by way of limitation. (Defs.' Mem. Supp. Mot. Summ. J. at 18; Doc. 27 at 18). Defendants argue that "foster child and ward" are not exhaustive and instead the word "including" or "includes" suggests that there is a possibility of other examples of "family members" and that Davis, as Cline's domestic partner, is such an example. As an initial matter, Defendants cite no authority for this proposition. Second, as indicated in Footnote 3, *supra*, Defendant Davis is not given the benefit of having ambiguities construed in her favor and the burden remains on Defendants to introduce evidence that would raise a genuine issue of material fact that the parties intended that she be included as a Class I insured. *Jaramillo*, 871 P.2d at 1347-1348. Plaintiff has not met her burden. *See* Footnote 3, *supra*.

[7] The Court notes the significance of this distinction between Class I insureds and Class II insureds. "Class I insureds may stack all uninsured motorist policies purchased by the named insured because those policies were purchased to benefit the named insured and his or her family, but Class II insureds may only recover under the policy on the car in which they rode because the purchaser only intended occupants to benefit from that particular policy." *Ponder v. State Farm Mutual Automobile Insurance*, 129 N.M. 698, 705 (N.M. 2000) (citations omitted).

Interstate policy and is only a Class II insured under the Hartford policy, summary judgment must be entered in favor of Plaintiffs.  *See McGarry*, 175 F.3d at 1198-1199.

**D.     Ambiguity**

Defendants have cited *Horne* and *Ponder* in support of their assertion that the entire definition of "family member" in the Interstate and Hartford policies is ambiguous.  *See Horne* 791 P.2d 61 (N.M. 1990); *Ponder*, 129 N.M. 698 (N.M. 2000); Defs.' Mot. Summ. J. at 15, 17-18, Doc. 29 at 15, 17-18).  *Horne* held that "family member" was ambiguous only in the instance where the named insured is a corporation; it made no finding as to whether the definition of "family member" is ambiguous in the context of the Interstate or Hartford policies, where the named insured was an individual.  *Horne*, 791 P.2d at 62-63.  *Ponder* found that the express language of the State Farm Policy in question was not ambiguous.  *Ponder*, 129 N.M. at 703.  In that case, the express language to which the Court referred was coverage of "relatives," with the definition of that term being identical to the definitions of "family member" in the Interstate and Hartford policies.  *Id.*, *See* Compl. Ex. A-B; Doc. 1, Ex. A-B.  Thus the *Ponder* Court found that the definition of "family member" was unambiguous.  *Id.*  The Court ultimately determined the policy to be ambiguous due to its examination of the extrinsic evidence surrounding the making of the contractual agreement, not the contractual language itself.  *Id.* at 703-704.

Even assuming this Court found the language in the Interstate Policy stating that a Class I insured is a "Name Insured and any 'family members'" and/or that its definition of "family member" is ambiguous, as the court outlined in Footnote 3, *supra*, Defendant Davis, as a third party beneficiary, is not afforded the benefit of having ambiguities construed in her favor and the burden of proof remains on Defendants to produce evidence that would raise a genuine issue of material fact that it was the contracting parties' intent that Davis be covered under the Interstate and Hartford policies as a

Class I insured. *Jaramillo v. Providence Washington Ins. Co.*, 871 P.2d 1343, 1347-1348. (N.M. 1994). The Court has carefully considered *Ponder* in which the New Mexico Supreme Court agreed with *Jaramillo* and its holding that third parties need not have ambiguities construed in their favor. *Ponder*, 129 N.M. at 706. However, the *Ponder* court found that Plaintiff, daughter of the named insured, who was in and out of the named insured's household, was not a third party because there was significant evidence that plaintiff had a reasonable expectation of coverage due to conversations between Plaintiff's mother and the insurance company in which the insurance company represented that Plaintiff would be "'fully covered'" and that her coverage would not be limited. *Id.* at 704-706. Further, Plaintiff was listed as the principal driver on the vehicle and was accordingly charged an additional premium. *Id.* at 705. In the instant action, while Defendant Davis is listed as a driver under the Hartford policy, unlike *Ponder*, Defendants had no reasonable expectation of coverage under either policy nor have Defendants presented any evidence that they were charged an additional premium to have Davis listed as a driver on the Hartford policy. *See id.*; Footnote 8, *infra*. Further, at oral argument, counsel for Defendants cited for the proposition that public policy dictates that the insurance policies should be construed in their favor. *Loya v. State Farm Mut. Ins. Co.*, 888 P.2d 447 (N.M. 1994). *Loya* is wholly distinguishable because the named insured in that case was excluded, through exclusionary language in the policy, from coverage for which he paid. *Id.* In this case Defendant Davis is not a named insured; the policies are not exclusionary. *See* Compl. Ex. A-B; Doc. 1 Ex. A-B. Davis is merely claiming that she is a Class I insured. As such, the burden still remains on Defendants as explained in *Jaramillo*. *See Jaramillo*, 871 P.2d at 1347-1348.

Defendants assert that Cline intended to benefit Davis with insurance coverage when she moved in with him in 1997. (Defs.' Resp. Mot. Summ. J at 3-4, 6; Doc.34 at 3-4, 6). Further, Defendants assert that Cline attempted to communicate this intention when he took Davis to Interstate

17

and told the agent that Davis could act for him. (Davis Dep. p. 62, ln. 13-17, Pls.'s Ex. 2, Doc. 27). Defendants also allege that because Davis' money was used to pay the bills, she cannot be denied coverage as a Class I insured under the policies. Defendants finally allege that an insurance agent has an affirmative duty to inquire if Cline intended to have Davis covered under the commercial policy. (Defs.' Resp. Mot. Summ. J. at 4; Doc. 34 at 4).

Defendant Davis stated in her deposition that she intended to have the commercial vehicles covered under a commercial policy with Interstate and intended to have the personal automobiles covered under a personal policy with Hartford. (Davis Dep. p. 69, ln. 4-7, Defs.' Ex. 2, Doc. 27). She also stated that she only operated one of the commercial vehicles and that was on an occasional basis. (Davis Dep. p. 62, ln. 18-21, Defs.' Ex. 2, Doc. 28). Davis further testified that she did all of the office and paper work, including paying bills and paying and renewing insurance policies. (Davis Aff. ¶ 3, Defs.' Ex. 2, Doc. 29). She handled the business of the company yet she never affirmatively asked to have her name included on the policies until rquesting her name be added to the Interstate policy in September 2004, well after the automobile accident. (Seidl Aff. ¶ 4, Pls.' Ex. D, Doc. 32). Ms. Seidl, an agent for Interstate indicated that she understood that Davis and Cline lived together but were not married. (Seidl Aff. ¶ 5, Pls.' Ex. D, Doc. 32). Defendants argument that they "attempted to communicate" their intention that Davis be covered under the Interstate policy by Cline's action of taking Davis to the agency and telling the agent that Davis could act for him is not sufficient to meet their burden on summary judgment.[8] Moreover, while Davis' income may have helped to pay the bills

---

[8] Defendants could be asserting that they had a reasonable expectation of coverage because Cline introduced Davis to his insurance agent. This argument fails because "the doctrine of reasonable expectations may be invoked when the language of an insurance policy or representations of the insurance company lead an insured to reasonably expect coverage" and in this case neither the language of the Interstate nor Hartford policies imply coverage for Davis. *See* Compl. Ex. A-B. There is no evidence before the Court which would indicate that Interstate or Hartford made **any** representation to Defendants that Davis would be covered under the policies. *Berlangieri v. Running Elk Corp.*, 132 N.M. 92, 95 (N.M. Ct. App. 2002).

from time to time, there is no evidence that *Davis'* money was used specifically to pay the insurance premiums. (Cline Dep. p. 15, ln 19-25, p. 16, ln 1-13, Defs.' Ex. 1, Doc. 28). Defendants cite no authority for their assertion that Interstate and Hartford had an affirmative duty to inquire if Cline intended to have Davis covered under the commercial policy. The Court is not persuaded that Defendants have met their burden of presenting evidence that would raise a genuine issue of material fact that it was the contracting parties' intent that Davis be covered under the Interstate and Hartford policies as a Class I insured. As such, summary judgment must be granted in favor of Plaintiffs. *See McGarry*, 175 F.3d at 1198-1199.

**IV.     Conclusion**

Upon review of the evidence presented on Defendants' Motion for Summary Judgment and Plaintiffs' Motion for Summary Judgment, this Court has determined that Defendants' Motion for Summary Judgment is not well-taken and is **DENIED** and Plaintiffs' Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**